UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MANDY VAN GORP, <br> AMBER NIKOLAI, <br> MEGAN BARTH, <br> DENISE ARREDONDO, <br><br> Plaintiffs, <br><br> v. <br><br> ELI LILY & COMPANY, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 1:22-cv-01650-TWP-MKK <br> ) <br> ) <br> ) <br> ) |

**ORDER GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS**

This matter is before the Court on Defendant Lilly USA, LLC's ("Lilly")[1] Partial Motion to Dismiss Amended Complaint (Filing No. 34). Plaintiffs Mandy Van Gorp ("Van Gorp"), Amber Nikolai ("Nikolai"), Megan Barth ("Barth"), and Denise Arredondo ("Arredondo") (collectively, "Plaintiffs") initiated this action after they were terminated from Lilly for refusing to receive the COVID-19 vaccine on medical and religious grounds. Plaintiffs assert various discrimination claims under the Americans with Disabilities Act of 1990, as amended 42 U.S.C. § 12101 *et seq.* (the "ADA"), and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. Lilly moves to dismiss all of Plaintiffs' claims, except their ADA and Title VII claims for failure to accommodate. For the following reasons, the Court **grants** Lilly's Partial Motion to Dismiss.

### I. BACKGROUND[2]

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Amended Complaint and

---

[1] Lilly was incorrectly named in the Amended Complaint as Eli Lilly & Company.

[2] In their briefs, the parties "dispute" several facts about the COVID-19 pandemic, including the numbers of Americans who tragically died from COVID-19. However, none of these "disputed" facts are relevant to the Motion before the Court, so those facts are not discuss here.

draws all inferences in favor of Plaintiffs as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

**A.     Lilly's COVID-19 Vaccine Mandate**

On August 12, 2021,[3] Lilly enacted a COVID-19 Vaccine Mandate (the "Mandate"), requiring that "every employee be vaccinated by November 15, 2021" (Filing No. 25 at ¶ 18). Lilly created a process for requesting medical and religious accommodations to the Mandate. *Id.* All requests were due by September 10, 2021, or they would not be considered. *Id.* at ¶ 19.

**B.     Plaintiffs' Accommodation Requests and Terminations**

Van Gorp was hired by Lilly in 2003 and worked as a Senior Sales Representative. *Id.* at ¶ 21. Van Gorp suffers from Celiac Disease. *Id.* at ¶ 22. Despite her condition, Van Gorp was able to meet the essential functions of her position with Lilly and met or exceeded Lilly's legitimate performance expectations. *Id.* at ¶ 23. In early September 2021, Van Gorp submitted a medical accommodation request under the Mandate and subsequently submitted a detailed vaccine exemption note from her doctor at Lilly's request. *Id.* at ¶¶ 25–26. On October 6, 2021, Van Gorp tested positive for COVID-19, and on October 8, 2021, she requested a vaccine deferral. *Id.* at ¶ 27. On October 8, 2021, Lilly denied Van Gorp's medical accommodation request. *Id.* at ¶ 28. On November 3, 2021, after recovering from COVID-19, Van Gorp submitted a religious accommodation request, but Lilly denied the request as untimely. *Id.* at ¶¶ 29–30. Van Gorp declined to receive the COVID-19 vaccine and was terminated on November 15, 2021. *Id.* at ¶ 35.

Nikolai was hired by Lilly in 2020 and worked as a Senior Sales Representative. During her employment, she met or exceeded Lilly's legitimate performance expectations. *Id.* at ¶ 38. On September 10, 2021, Nikolai submitted a religious accommodation request. *Id.* at ¶ 40. On

---

[3] The Amended Complaint alleges that events took place "on or about" dates certain. For ease of reading, the Court will refer only to the dates certain.

September 29, 2021, Lilly temporarily approved her request but stated that "because Nikolai's responsibilities required her to engage regularly and/or directly with customers, the accommodation request posed an undue hardship for the Defendant and its customers and would expire after November 15, 2021." *Id.* at ¶ 41.  Between September and November 2021, Nikolai attempted to find an alternate position with Lilly, but she was not offered any other position. *Id.* at ¶¶ 45-46.  Nikolai declined to receive the COVID-19 vaccine and was terminated on November 15, 2021. *Id.* at ¶¶ 47-48.

Barth was hired by Lilly in 2020 and worked as a Sales Representative. *Id.* at ¶ 50.  Barth suffers from telangiectasias and MTHFR gene mutations. *Id.* at ¶ 51.  Despite her conditions, she was able to meet the essential functions of her position with Lilly and routinely met or exceeded Lilly's legitimate performance expectations. *Id.* at ¶ 52.  In early September 2021, Barth submitted a medical accommodation request and subsequently submitted additional medical information at Lilly's request. *Id.* at ¶¶ 53-54.  On October 1, 2021, Lilly denied Barth's medical accommodation request. *Id.* at ¶¶ 55-56.  On October 28, 2021, after contracting and recovering from COVID-19, Barth submitted a religious accommodation request, but Lilly denied the request as untimely. *Id.* at ¶¶ 56-58.  Barth declined to receive the COVID-19 vaccine and was terminated on November 15, 2021. *Id.* at ¶ 64.

Arredondo was hired by Lilly in 2019 and worked as a Senior Sales Representative.  During her employment, she met or exceeded Lilly's legitimate performance expectations. *Id.* at ¶ 66. In early September 2021, Arredondo submitted a religious accommodation request and subsequently submitted additional information at Lilly's request. *Id.* at ¶¶ 67-68.  On September 29, 2021, Lilly temporarily approved her request but stated that "because Arredondo's responsibilities required her to engage regularly and/or directly with customers, the accommodation request posed an undue hardship for the Defendant and its customers and would expire after November 15, 2021." *Id.* at

¶ 69. Between September 29, 2021 and November 15, 2021, Arredondo applied for at least two remote positions, but her applications were denied. *Id.* at ¶ 73. During the application process, Arredondo was told that "[t]hose selected for the positions she applied for, 'made the position part of their career path' (i.e., received the vaccine); and . . . that if she was not vaccinated by November 15, 202[1], she would, 'not be able to continue' in the interview process for any position she had previously applied to and was qualified for." *Id.* at ¶ 74. She declined to receive the COVID-19 vaccine and was terminated on November 15, 2021. *Id.* at ¶¶ 75-76.

Due to Plaintiffs' sales roles, they did not interact with one of Lilly's facilities or locations on a routine basis. Even if they had, Plaintiffs agreed to abide by Lilly's masking and testing requirements. Throughout 2020 and 2021, Plaintiffs regularly worked without issue or concern from Lilly and Lilly's customers regarding COVID-19. *Id.* at ¶¶ 31, 42, 60, 70. Up until November 15, 2021, Plaintiffs had complied with Lilly's COVID-19 policies, which included providing proof of antibodies, following mask protocols, and completing daily or weekly COVID-19 testing. *Id.* at ¶¶ 32, 43, 61, 72.

C.   **Procedural History**

Plaintiffs initiated this action on August 19, 2022. On November 23, 2022, they filed an Amended Complaint, which is the operative pleading (Filing No. 25). Plaintiffs allege that Lilly discriminated against Van Gorp and Barth on the basis of their disabilities in violation of the ADA, and discriminated against all Plaintiffs on the basis of their religion. Plaintiffs cite several theories of liability under the ADA and Title VII, including disparate treatment, "regarded as" disabled discrimination, disparate impact, *quid pro quo* harassment, hostile work environment, and failure to accommodate. On January 6, 2023, Lilly moved to dismiss all of Plaintiffs' claims except their failure to accommodate claims.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("[I]t is not enough to give a threadbare recitation of the elements of a claim without factual support."). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III. DISCUSSION

Plaintiffs' Amended Complaint asserts the following claims. Count I: Title VII – Religious Discrimination (Van Gorp) ADA; Count II: ADA – Discrimination (Van Gorp); Count III: Title

VII – Religious Discrimination (Nikolai); Count IV: Title VII – Religious Discrimination (Barth); Count V: ADA – Discrimination (Barth); and Count VI: Title VII – Religious Discrimination (Arredondo). The claims on behalf of Van Gorp and Barth are under theories of disparate treatment, "regarded as" disabled discrimination, and disparate impact. The Title VII claims are under theories of disparate treatment, *quid pro quo* religious harassment, and hostile work environment. Lilly argues Plaintiffs fail to adequately assert claims under any of these theories. The Court will address each theory in turn.

A. **Van Gorp and Barth's ADA Claims**

1. **Disparate Treatment**

The ADA prohibits covered entities from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The Amended Complaint alleges that Lilly discriminated against Van Gorp and Barth "based on [their] actual or perceived disability when [they] were subject to less favorable terms and conditions in [their] employment and when [their] accommodation request[s] for the COVID-19 Mandate [were] denied." (Filing No. 25 at ¶¶ 86, 105.) To prove an ADA claim for disparate treatment, a plaintiff must show: "(1) [s]he is disabled; (2) [s]he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by [her] disability." *Roberts v. City of Chicago*, 817 F.3d 561, 565 (7th Cir. 2016).

Lilly argues that Van Gorp and Barth fail to satisfy the third element, causation, for three reasons. First, Van Gorp and Barth allege they were terminated because Lilly treated them the same as non-disabled employees with respect to vaccination, not because they were treated less favorably because of their disability. (Filing No. 35 at 9.) Stated differently, Van Gorp and Barth only allege that Lilly failed to accommodate their disability. *See DiFranco v. City of Chicago*,

6

589 F. Supp. 3d 909, 917 (N.D. Ill. 2022) (dismissing ADA disparate treatment claim as a "repackaged" failure to accommodate claim).  Second, Van Gorp and Barth were terminated as a "consequence of" their disability, not "because of" their disability (Filing No. 35 at 10).  Under *Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194 (7th Cir. 1997), "if an employer fires [an individual] for any reason other than that he is disabled there is no discrimination 'because of' the disability. This is true even if the reason is the consequence of the disability . . . ." *Id.* at 1196 (concluding that employer did not discriminate by terminating plaintiff for absenteeism, even though absenteeism was a result of plaintiff's heart attack).  Lilly contends that Van Gorp and Barth were terminated because they were unvaccinated, so their terminations were not discriminatory even though their refusal to be vaccinated was a consequence of their disability.  Third, Lilly contends that in light of public health information regarding COVID-19, Van Gorp and Barth cannot create a reasonable inference that their terminations were motivated by discriminatory intent, rather than health concerns (Filing No. 35 at 12–13).

      Lilly's first two arguments are well-taken and supported by ample Seventh Circuit caselaw.[4]  However, the Court need not delve into the merits of Lilly's arguments because Plaintiffs' response brief makes no mention whatsoever of their disparate treatment claims.  As the Seventh Circuit has stated repeatedly, "[o]ur system of justice is adversarial, and our judges are busy people.  If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning."  *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) (citations omitted).

---

[4] Lilly's third argument is premature. It asks the Court to draw inferences in Lilly's favor about its proffered reason for enacting the Mandate and terminating Plaintiffs, which the Court may not do at this stage.

Because Plaintiffs have failed to defend their disparate treatment claims, they have waived any arguments in opposition. *See Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013) ("Because [the plaintiffs] did not provide the district court with any basis to decide their claims, and did not respond to the [defendant's] arguments, these claims are waived."); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument … results in waiver."); *Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 173 n.1 (7th Cir. 1996) (holding argument waived where appellants "failed to develop the argument in any meaningful manner"); *Myers v. Thoman*, No. 09-cv-0544, 2010 WL 3944654, at *4 (S.D. Ind. Oct. 6, 2010) ("The Seventh Circuit has clearly held that a party who fails to respond to points made … concedes those points."). Accordingly, Van Gorp's and Barth's ADA disparate treatment claims are **dismissed**.

### 2. "Regarded As" Disabled Discrimination

Plaintiffs also allege that Lilly perceived unvaccinated employees as being disabled and discriminated against them on the basis of that perceived disability (Filing No. 25 at ¶ 85). However, in their response brief, Van Gorp and Barth voluntarily dismissed their "regarded as" claims (Filing No. 43 at 2).

### 3. Disparate Impact

Van Gorp and Barth argue that their ADA claims should survive dismissal because they have adequately alleged disparate impact claims (Filing No. 43 at 6). Disparate treatment and disparate impact are separate and distinct claims. Disparate treatment occurs when an employer treats an employee less favorably than others because of a protected characteristic, whereas disparate impact involves "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003); *see Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). The two types of claims are not interchangeable. "Because 'the factual

issues, and therefore the character of the evidence presented, differ when the plaintiff claims that a facially neutral employment policy has a discriminatory impact on a protected class,' courts must be careful to distinguish between these theories." *Raytheon Co.*, 540 U.S. at 54 (internal citations omitted) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 n.2 (1981)).

Van Gorp and Barth contend they "have alleged that Lilly implemented a Mandate" which " was neutrally applied to everyone," so they "have properly plead a disparate impact claim and placed Lilly on notice." (Filing No. 43 at 7.) On reply, Lilly argues that Plaintiffs' Amended Complaint does not sufficiently allege a disparate impact claim, adding that "[g]iven the dearth of allegations" regarding disparate impact, "Lilly was unaware until receipt of the Response that Plaintiffs were attempting to bring such a claim." (Filing No. 47 at 2.)

The Court agrees with Lilly. Identifying a facially neutral policy, without more, is not enough to assert a disparate impact claim. Van Gorp and Barth must also show that the policy disproportionately affected disabled employees, but the Amended Complaint "is devoid of any 'factual content . . . tending to show that [the Mandate], or some particular part of it, caused a relevant and statistical disparity between' disabled and non-disabled [employees]." *Roberts*, 817 F.3d at 566 (quoting *Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir. 2014), *cert. denied*, 574 U.S. 875 (2014)); *see Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 717 (7th Cir. 2012) ("The plaintiff must . . . establish causation by 'offer[ing] statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group."). "Notably, 'it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact.'" *Puffer*, 675 F.3d at 717 (quoting *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005)); *see Adams*, 742 F.3d at 733 ("[T]he amended complaint alludes to disparate impact in

wholly conclusory terms. In several places the complaint uses the words 'disproportionate' and 'impermissible impact' and other synonyms, but those are bare legal conclusions, not facts.").

In their response brief, Van Gorp and Barth argue the Mandate disparately impacted disabled employees because "individuals with a disability are more likely to seek an accommodation as (1) they are more likely to suffer an adverse reaction and (2) their medical providers are needed to submit a disability request and therefore said request is unlikely to be without merit or good cause." (Filing No. 43 at 8.) Van Gorp and Barth also assert that they and Robin Clark, a non-party former Lilly employee, were denied medical accommodations, but nine former and current Lilly employees, including Nikolai and Arredondo, were granted temporary religious accommodations. *Id.*

These assertions are not enough to withstand dismissal for three reasons. First, none of these assertions appear anywhere in the Amended Complaint. Second, the assertion that disabled employees are "more likely to seek an accommodation" is conclusory and makes unfounded generalizations about all individuals with disabilities. And third, these assertions are insufficient to allow for any statistical comparison between disabled and non-disabled employees. "A disparate impact theory of discrimination requires the plaintiff to put forth evidence (facts or statistics) demonstrating that the challenged employment practice has a disproportionately negative effect upon members of the protected class." *Anfeldt v. United Parcel Service, Inc.*, No. 15 C 10401, 2017 WL 839486, at *2 (N.D. Ill. Mar. 3, 2017); *see Adams*, 742 F.3d at 733 (affirming dismissal of disparate impact claim on the pleadings; "In a complex disparate-impact case like this one, we would expect to see some factual content in the complaint tending to show that the City's testing process, or some part of it, caused a relevant and statistical disparity between black and white applicants for promotion.").

Here, Van Gorp and Barth merely assert that three medical accommodation requests were denied and that nine religious accommodation requests were temporarily approved. Without knowing the number of medical and religious accommodation requests submitted, and the number of those requests approved or denied, it is impossible to know whether disabled employees were disproportionately affected by the Mandate. To illustrate, if only six Lilly employees requested medical accommodations and three were approved (fifty percent), and if eighteen Lilly employees requested religious accommodations and nine were approved (fifty percent), then there would be no disparity between disabled employees and non-disabled employees. The fact that three medical accommodation requests were denied and nine religious accommodation requests were temporarily approved does not show a disparate impact. At most, it shows that employees were more likely to request religious accommodations than medical accommodations, which cuts against Van Gorp and Barth's disparate impact theory.

Van Gorp and Barth do not sufficiently allege that the Mandate impacted disabled employees at a disproportionately higher rate than non-disabled employees, so their ADA disparate impact claims are **dismissed**.

**B.     Plaintiffs' Title VII Claims**

   **1.     Disparate Treatment**

"Title VII prohibits employers from 'discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Porter v. City of Chicago*, 700 F.3d 944, 951 (7th Cir. 2012) (quoting 42 U.S.C. § 2000e-2(a)(1)). To assert a claim for employment discrimination, "a plaintiff must advance plausible allegations that she experienced discrimination because of her protected characteristic." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022) (affirming dismissal of race, national origin, and age discrimination claims by plaintiff terminated

11

pursuant to company policy because plaintiff did not allege "a link between any aspect of that policy and her contention that the agency discharged her because she is Polish, white, or over 50").

Lilly argues that Plaintiffs have failed to adequately allege that they were terminated because of their religion. The Amended Complaint alleges that Plaintiffs were all terminated pursuant to the Mandate, which "required that *every employee* be vaccinated by November 15, 2021", not because of their religion (Filing No. 25 at ¶ 3 (emphasis added)). Lilly's argument is well-taken and unopposed. *See Kirksey*, 168 F.3d at 1041. Plaintiffs have therefore waived any opposition to this argument, and their religious disparate treatment claims are **dismissed**. *See Goodpaster*, 736 F.3d at 1075; *Bonte*, 624 F.3d at 466; *Bratton*, 77 F.3d at 173 n.1.

### 2. *Quid Pro Quo* Religious Harassment

A violation of Title VII may be predicated on either of two types of harassment: the conditioning of employment benefits upon certain employee conduct ("*quid pro quo*"); and creating a hostile or offensive working environment ("hostile work environment"). *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 57 (1986). *Quid pro quo* cases typically involve sexual harassment—the conditioning of benefits on sexual favors—but Plaintiffs allege Lilly committed *quid pro quo* religious harassment by forcing Plaintiffs to choose between their deeply held religious beliefs against vaccination and keeping their jobs (Filing No. 43 at 12).

In its Motion to Dismiss, Lilly questions whether *quid pro quo* religious harassment is a viable cause of action in the Seventh Circuit. Lilly alternatively argues that Plaintiffs have failed to show that Lilly enacted or enforced the Mandate on the basis of religion. The Court need not discuss whether *quid pro quo* racial harassment claims are viable because, assuming that they are, Plaintiffs have failed to adequately plead such a claim.

Because *quid pro quo* claims are Title VII claims, and "because Title VII is premised on eliminating *discrimination*," a plaintiff asserting a *quid pro quo* harassment claim must show that

12

she was harassed on the basis of her protected class. *Holman v. Indiana*, 211 F.3d 399, 403 (7th Cir. 2000) (emphasis in original). Absent that discriminatory animus, there is no discrimination, and the plaintiff has no cause of action under Title VII. *Cf. Holman*, 211 F.3d at 403 ("Title VII does not cover the 'equal opportunity' or 'bisexual' harasser[—]because such a person is not *discriminating* on the basis of sex. He is not treating one sex better (or worse) than the other; he is treating both sexes the same (albeit badly)." (Emphasis in original)).

In the few cases that have allowed *quid pro quo* religious harassment claims to proceed, the plaintiffs adequately showed that the harassment was motivated by religious animus. In *Venters v. City of Delphi*, 123 F.3d 956 (7th Cir. 1997), the plaintiff's employer lectured plaintiff about her "sinful life" and "made adherence to [the employer's] set of religious values a requirement of continued employment." *Id.* at 977. In *Venters*, the employer's harassment was undoubtedly motivated by religious animus, and the plaintiff was unmistakably harassed on the basis of her religion. Similarly, in *Erdmann v. Tranquility Inc.*, 155 F. Supp. 2d 1152 (N.D. Cal. 2001), the plaintiff, a homosexual man, was allegedly harassed by his Mormon boss, who told the plaintiff that it is "immoral" to be a homosexual and that plaintiff "should become heterosexual and a Mormon or he would go to hell." *Id.* at 1156–57. In *Erdmann*, the harassment also plainly stemmed from religious animus.

In this case, by contrast, the Mandate applied to "every employee" in response to the COVID-19 pandemic (Filing No. 25 at ¶ 3). There are no factual allegations indicating that Lilly enacted or enforced the Mandate on the basis of any employee's religion or with any discriminatory animus. Allegations that, absent an accommodation, a neutral mandate forced Plaintiffs to choose between their deeply held beliefs and their continued employment does not amount to *quid pro quo* harassment. Instead, these types of allegations fit squarely within a failure to accommodate claim. Plaintiffs' *quid pro quo* religious harassment claims are **dismissed**.

### 3. Hostile Work Environment

To assert a Title VII hostile work environment claim, a plaintiff must allege: (1) she was subject to unwelcome harassment; (2) the harassment was based on her protected characteristic; (3) the harassment was severe or pervasive so as to create a hostile or abusive working environment; and (4) there is basis for employer liability. *See Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004). "Specifically, Title VII is violated when 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014) (citing *Mendenhall v. Mueller Streamline Co.*, 419 F.3d 686, 691 (7th Cir. 2005)).

Lilly argues that Plaintiffs cannot satisfy the second or third elements of their hostile work environment claims. Lilly contends that the Mandate was not severe or pervasive enough to create a hostile work environment, and that the Mandate was not based on Plaintiffs' religion. (Filing No. 35 at 21–22.) Plaintiffs respond that "the requirement that individuals receive the vaccine in contravention of their religious beliefs alone is sufficiently severe to trigger liability" (Filing No. 43 at 13). "Whether harassment was so severe or pervasive as to constitute a hostile work environment is generally a question of fact for the jury," so the Court declines to address whether the Mandate was sufficiently severe or pervasive at this stage. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 901 (7th Cir. 2018).

Nevertheless, the Court agrees with Lilly that Plaintiffs fail to allege that the Mandate was based on Plaintiffs' religion. Plaintiffs contend that the "hostile environment of which Plaintiffs complain is clearly premised on their religious beliefs" because "Plaintiffs objected to receiving the vaccine **because of their religion**" (Filing No. 43 at 14 (emphasis in original)). But just because Plaintiffs objected to the Mandate on the basis of their religion does not mean that Lilly

14

enacted or enforced the Mandate on the basis of their religion. In other words, Plaintiffs have not alleged that Lilly acted with discriminatory animus.

Like their *quid pro quo* claims, Plaintiffs' hostile work environment claims cannot survive without a showing of discriminatory intent by Lilly. *See, e.g.*, *Hall v. City of Chicago*, 713 F.3d 325, 332 (7th Cir. 2013) ("Hall, however, must do more than show Johnson created a hostile work environment: the motive for the alleged mistreatment must be 'sufficiently connected' to Hall's sex. We do not doubt Johnson harbored animus towards Hall, but we must review the record to determine whether Hall has produced enough evidence from which a jury could infer Johnson was motivated by Hall's gender."). Plaintiffs' hostile work environment claims are therefore **dismissed**.

## IV.     CONCLUSION

For the reasons stated above, the Court **GRANTS** Lilly's Partial Motion to Dismiss Amended Complaint (Filing No. 34). Plaintiffs' claims under Title VII and the ADA for disparate treatment, "regarded as" disabled discrimination, disparate impact, *quid pro quo*, and hostile work environment are **DISMISSED without prejudice**.[5] Plaintiffs are granted leave of **fourteen (14) days from the date of this Order** to file a Second Amended Complaint concerning their dismissed theories of liability if such filing would not be futile. If nothing is filed by that date, this matter will proceed as to only Plaintiffs' failure to accommodate claims.

**SO ORDERED**.

Date:   8/24/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

---

[5] "[A] plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed . . . [unless] amendment would be futile or otherwise unwarranted." *Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 519, 520 (7th Cir. 2015).

DISTRIBUTION:

Andrew Dutkanych, III
BIESECKER DUTKANYCH & MACER LLC (Indianapolis)
ad@bdlegal.com

Taylor Jon Ferguson
BIESECKER DUTKANYCH & MACER, LLC
tferguson@bdlegal.com

Kara Elizabeth Cooper
WINSTON & STRAWN/Chicago
kecooper@winston.com

Katharine P Lennox
MCGUIRE WOODS LLP
klennox@mcguirewoods.com

Michael Ross Phillips
MCGUIRE WOODS LLP
mphillips@mcguirewoods.com

Michael P. Roche
WINSTON STRAWN LLP
mroche@winston.com

Peter A. Milianti
MCGUIRE WOODS LLP (Chicago)
pmilianti@mcguirewoods.com

Sarah Kreger
WINSTON & STRAWN/Chicago
skreger@winston.com